UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| GULF OFFSHORE LOGISTICS, LLC and JNB OPERATING, LLC | CIVIL ACTION |
| | NO. 16-8247 |
| VERSUS | |
| | SECTION "N" (4) |
| CLAUDE NORRIS, DOUGLAS KWAW, and JAMES MUSGROVE | |

**ORDER & REASONS**

Before the Court is the motion to dismiss (Rec. Doc. 7), filed by the defendants, Claude Norris ("Norris"), Douglas Kwaw ("Kwaw"), and James Musgrove ("Musgrove"). The plaintiffs, Gulf Offshore Logistics, LLC ("GOL") and JNB Operating, LLC ("JNB") oppose the motion. (*See* Rec. Doc. 17). Now, having considered the memoranda of the parties, including the reply (Rec. Doc. 18) and sur-reply (Rec. Doc. 23), as well as the record and applicable law, the Court grants the motion and dismisses the plaintiffs' First Amended Complaint for Declaratory Judgment,[1] on account of a parallel lawsuit pending in California state court.

---

[1] At the outset, the Court notes that the plaintiffs have, since the submission of the instant motion, amended their Complaint for Declaratory Judgment to affirmatively identify the name and state of citizenship of each member of the GOL and JNB LLCs, to include additional facts as to the amount in controversy, and to correct one factual assertion regarding the service of Douglas Kwaw. The Court agrees with the plaintiffs' statement that "[t]he amendment . . . has limited, if any, impact on the arguments made by either side in the Seaman's Motion to Dismiss." (Rec. Doc. 25-1 at p.5). Considering the amendment, the outcome of the ruling herein does not change.

I.   **BACKGROUND**

This declaratory judgment action concerns a choice of law issue critical to a labor dispute between the parties. The plaintiffs, GOL and JNB, are limited liability companies operating in the maritime industry and headquartered in Raceland, Louisiana. Specifically, GOL contracts and brokers vessels for JNB, a marine transportation business. In turn, JNB employs the crews and operates the vessels to provide offshore marine transportation services, such as supplying oil platforms, in domestic and international waters. The defendants, Norris, Kwaw, and Musgrove (collectively the "Mariners") worked as crew members for JNB aboard a number of vessels in the Gulf of Mexico and Pacific Ocean. As of February 3, 2016, JNB had terminated its employment of the last of the three Mariners, for economic reasons extraneous to the litigation.

Several months after the final termination, by letter dated May 17, 2016, the Mariners notified GOL and JNB, as well as the California Labor and Workforce Development Agency ("California LWDA"), of potential wage claims related to their work aboard a common vessel, the ADELE ELISE, while assigned to waters off the coast of California.  The letter also stated that the Mariners intended to pursue the claims, all under the California Labor Code, should the California LWDA decline to investigate. GOL and JNB responded on June 3, 2016, by filing in the Eastern District of Louisiana the instant declaratory judgment action, which seeks a judicial determination of whether "(a) Louisiana law applies to the employment contracts and relationships between Defendants and Plaintiffs, and (b) the compensation provided to Defendants complied with Louisiana law, regardless of the portable nature of Defendants' jobs." (Rec. Doc. 1 at p. 3).

The Mariners now move to have this declaratory judgment action dismissed pursuant to Federal Rules of Civil Procedure 12(b)(1)-(2). In support of their motion, the Mariners present two main arguments: First, the Mariners contend that their contacts with the State of Louisiana are

insufficient to support the Court's exercise of personal jurisdiction, primarily because none of the Mariners reside in Louisiana and their in-person appearances in the State were limited. Second, and alternatively, the Mariners urge the Court to abstain from deciding the action, out of deference to a parallel lawsuit (the "California lawsuit") filed by the Mariners on July 14, 2016 in the Superior Court of the State of California for the County of Ventura.[2] After having been removed and remanded, the California lawsuit is pending in state court at this time.[3]

## II. LAW AND ANALYSIS

### A. Personal Jurisdiction

When challenged by a defendant, the burden of establishing personal jurisdiction rests on the plaintiff. *Planet Beach Franchising Corp. v. C3Ubit, Inc.*, 2002 WL 1870007 at *1 (E.D. La. Aug. 12, 2002) (citing *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985)). If the court decides the issue without the benefit of a full evidentiary hearing, the plaintiff's burden is to make a *prima facie* jurisdictional showing. *Id.* (citing *Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir. 1994)). In determining whether a *prima facie* showing has been made, the court is to "resolve all undisputed facts submitted by the plaintiff, as well as all facts contested in the affidavits, in favor of jurisdiction." *Luv N' Care Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 470 (5th Cir. 2006) (citing *Wyatt*

---

[2] In the California lawsuit, the Mariners allege the following eight causes of action, all under state law, against GOL and JNB: (1) failure to pay minimum wages; (2) failure to pay wages at the agreed rate; (3) failure to pay overtime compensation; (4) failure to pay maintain accurate payroll records; (5) failure to issue accurate, itemized wage statements; (6) failure to timely pay all wages due upon termination of employment; (7) violation of the California Unfair Competition Law; and (8) civil penalties under the California Private Attorney General Act. (Rec. Doc. 7-1 at pp. 3-4).

[3] GOL and JNB removed the California lawsuit on the basis of diversity jurisdiction, as well as federal question jurisdiction premised upon the Fair Labor Standards Act and general maritime law. After the filing of the instant motion to dismiss in the case at bar, the United States District Court for the Central District of California remanded the California lawsuit. (*See* Rec. Doc. 24-1).

*v. Kaplan*, 686 F.2d 276, 280 (5th Cir. 1982). Conflicting affidavits are to be resolved in the plaintiff's favor. *See Luv N' Care*, 438 at 470.

Establishing personal jurisdiction over a non-resident requires the plaintiff to show that the forum state's long-arm statute authorizes the court's jurisdiction and that the exercise would not exceed the boundaries of due process under the United States Constitution. *See Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999). These two requirements are one in the same in Louisiana, as the State's long arm statute extends the jurisdiction of its courts to the full limits of constitutional due process. *Planet Beach*, 2002 WL 1870007 at *2. Therefore, in the present case, the Court's concern is whether its exercise of jurisdiction over the Mariners would comport with the due process requirements of the Constitution.

"The Due Process Clause of the Fourteenth Amendment guarantees that no federal court may assume jurisdiction *in personam* of a non-resident defendant unless the defendant has meaningful 'contacts, tie or relations' with the forum state. *Luv N' Care Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945)). To comply with due process, the plaintiff must show that the defendant (1) purposefully availed himself of the benefits and protections of the forum state by establishing "minimum contacts" with that state, and (2) the exercise of personal jurisdiction over the defendant does not offend "traditional notions of fair play and substantial justice." *Latshaw*, 167 F.3d at 211 (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Whether minimum contacts exist is a fact intensive inquiry – the touchstone being whether "the defendant purposefully directed his activities towards the forum state, such that he could reasonably foresee being haled into court there." *Southern Marsh Collection, LLC. v. C.J. Printing Inc.*, 2015 WL 331919 at *1 (M.D. La. Jan. 26, 2015) (citing *Luv N' Care Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 470 (5th Cir. 2006)). Minimum

contacts can give rise to either general or specific jurisdiction, depending on the extent of the defendant's forum activities. *Hazim v. Schiel & Denver Book Publishers*, 647 Fed.Appx. 455, 458 (5th Cir. 2016).

General jurisdiction allows the court to exercise personal jurisdiction over the defendant as to any action brought against him, regardless of its relation, if any, to his contacts with the forum. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415 (1984); *Choice Healthcare, Inc. v. Kaiser Found. Health*, 615 F.3d 364, 368 (5th Cir. 2010). Establishing general jurisdiction requires the plaintiff to show that the defendant's contacts with the forum were "continuous and systematic." *Choice Healthcare*, 615 F.3d at 368. To meet this standard, "[the] defendant's contacts must be substantial; random, fortuitous, or attenuated contacts are not sufficient." *Id.* at 368 (citing *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 610 (5th Cir. 2008).

Specific jurisdiction, on the other hand, may exist based on contacts that are singular or sporadic, or otherwise less pervasive than continuous and systematic, but "only *if* the cause of action asserted arises out of or is related to those contacts. In other words, such jurisdiction exists when a nonresident defendant has purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities." *Hazim*, 647 Fed. Appx. at 458 (quoting *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 243 (5th Cir. 2008) (internal quotation marks omitted). The United States Court of Appeals for the Fifth Circuit has distilled the test for specific jurisdiction down to a three-step inquiry:

(1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there;

(2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and

(3) whether the exercise of personal jurisdiction is fair and reasonable.

5

*Monkton Ins. Services, Ltd. v. Ritter*, 768 F.3d 429, 433 (5th Cir. 2014) (quoting *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006)). The first two steps reflect the due process requirements of minimum contacts, and the third step ensures that the courts adhere to traditional notions of fair play and substantial justice. *See Athletic Training Innovations, LLC v. eTagz, Inc.*, 955 F.Supp.2d 602, 613 (E.D.La. 2013) (citation omitted).

To show minimum contacts are present in this case, GOL and JNB cite the following activities: (1) the Mariners' choice to enter an employment relationship with a Louisiana employer by applying in person in Louisiana, being hired in Louisiana, and reporting for work at the Louisiana home office when they worked on vessels based out of Louisiana; (2) payment of Louisiana state income tax and filing for unemployment in Louisiana; (3) working upon vessels with a chain of command culminating in Louisiana-based employees, including daily reporting and contact with Louisiana-based management for policies, procedure, and instructions; and (4) the Mariners' frequent contact with Louisiana to handle the logistics of all of their work travel, payroll issues, and Human Resources and benefits needs. (Rec. Doc. 23 at pp. 6-7).

For their part, the Mariners dispute the number of visits to Louisiana, arguing that they personally appeared in the forum state on only one occasion, when they travelled to JNB's office in Raceland, Louisiana, to interview for and accept employment. A close review of the affidavits submitted on the issue reveals that they do not necessarily contradict. JNB's Timothy Morvant attests that the company's seagoing employees, in general, "*typically* worked on their assigned vessels for a hitch lasting three to six weeks." (Rec. Doc. 17-1 at ¶ 8) (emphasis added). Mr. Morvant further attests that Kwaw, Norris, and Musgrove, specifically, worked between 214 and 334 days on vessels located in the Gulf of Mexico and, at the start of each hitch in the Gulf, reported

to JNB's office in Raceland, Louisiana. (*Id.* at ¶¶ 8, 29). He does not provide the actual number of hitches that Kwaw, Norris, and Musgrove worked.

While Mr. Morvant's affidavit seems to imply that each Mariner appeared in the forum state between five and fifteen times to begin hitches in the Gulf of Mexico, the Mariners' affidavits state in no uncertain terms that they appeared in Louisiana only once, at the very beginning of their employment. No matter the actual number of visits, however, it is uncontested that none of the Mariners worked a hitch in the Gulf of Mexico in, at least, twenty-six months preceding termination. In fact, at the time of Kwaw's discharge, he had not worked in the Gulf in over four years, or fifty-three months to be exact. Thus, the Court considers all in-person appearances in Louisiana to be attenuated in this case, based on timing alone.

Other forum contacts include two of the Mariners having Louisiana taxes deducted and paid on their behalf, one collecting Louisiana unemployment benefits, and all three having been in intermittent contact with their Louisiana employer for administrative reasons. None of these contacts appear substantial enough to justify the Court's exercise of jurisdiction without regard to the relation of the action to the contact. Therefore, the Court finds that it does not have general jurisdiction in this case.

While it would be unfair to expect the Mariners to appear in Louisiana to answer any suit, regardless of subject matter, the Court cannot overlook that the Mariners travelled to Raceland, Louisiana, to interview for and accept employment. By doing so, the Mariners purposefully directed their activities toward Louisiana and purposefully availed themselves of the privileges of conducting business in the State. Certainly, the Mariners should have reasonably anticipated being haled into a court in Louisiana over a labor dispute with their Louisiana employer of multiple years. Because this action arises out or relates to the Mariners' employment contacts, the Court

believes those contacts provide a sufficient basis for the exercise of specific jurisdiction in this case.

The final step in the test for specific jurisdiction requires a determination of whether the exercise of jurisdiction over the Mariners would comport with traditional notions of fair play and substantial justice. This step places the burden on the Mariners to show that the exercise of jurisdiction would be unfair or unreasonable. *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006). The analysis is guided by five factors set forth in *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985),[4] the most important of which is consideration of the burden on the defendant. *See Schlesigner v. ES & H, Inc.*, 2011 WL 3819585, at *3 (E.D.La. Aug. 29, 2011) (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980)).

Application of the *Burger King* factors in this case does not tip the scales in the Mariners' favor. First, the Mariners have not persuaded the Court that litigating in Louisiana would be unusually burdensome on them, particularly given that they enjoyed being in the employ of a Louisiana-based company for multiple years. Second, GOL and JNB, as well as the State of Louisiana, have a legitimate interest in having a venue available here, in Louisiana, to litigate a labor dispute between a local employer and its employees. Third, providing a local forum under the circumstances advances not only the interest of the interstate judicial system in obtaining an efficient resolution of labor disputes, but also the interest of the several states in seeing that their social policies apply to their own companies and employees. In light of these findings, the Court

---

[4] The *Burger King* factors include: "(1) the burden on the defendant; (2) the forum state's interest in litigating the dispute; (3) the plaintiff's interest in obtaining effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the matter; and (5) the shared interest of the several states in furthering fundamental social policies." *Schlesigner v. ES & H, Inc.*, 2011 WL 3819585, at *3 (E.D.La. Aug. 29, 2011).

concludes that it has jurisdiction, and that its exercise over the Mariners would be fair and reasonable.

## B. The Court's Discretion to Entertain the Declaratory Judgment Action

"In a case of actual controversy within its jurisdiction," the Declaratory Judgment Act allows "any court of the United States, upon the filing of an appropriate pleading, [to] declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. §2201A. The purpose of the Declaratory Judgment Act is twofold: "to afford one threatened with liability an early adjudication without waiting until his adversary should see fit to begin an action after damage has accrued . . ." and "to provide a means of settling an actual controversy before it ripens into a violation of the civil or criminal law, or a breach of a contractual duty." *Rowen Companies, Inc. v. Griffin*, 876 F.2d 26, 28 (5th Cir. 1989) (citations and internal quotation marks omitted). The Act does not entitle litigants to a judicial determination of their rights; rather, it gives the district courts discretionary authority to provide parties with declaratory relief under certain circumstances. *See Sherwin-Williams Co. v. Holmes County*, 343 F.3d 383, 389 (5th Cir. 2003); *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995) (describing the Declaratory Judgment Act as Congress "plac[ing] a remedial arrow in the district court's quiver," by allowing it "an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants"). The court's discretion in this respect is broad, but not unfettered. *Travelers Insurance Co. v. Louisiana Farm Bureau Federation*, 966 F.2d 774, 778 (5th Cir. 1993).

In deciding whether to maintain or dismiss a declaratory judgment action, a district court must conduct a three-step inquiry, set forth by the Fifth Circuit in *Orix Credit Alliance, Inc. v. Wolfe*, 212 F.3d 891, 895 (5th Cir. 2000). *See Sherwin-Williams Co. v. Holmes County*, 343 F.3d 383, 387 (5th Cir. 2003). The first step is for the court to determine whether the declaratory action

is "justiciable," meaning, that there exists between the parties an actual controversy, as opposed to one that is abstract or hypothetical.[5] *Id.*; *Orix Credit Alliance, Inc. v. Wolfe*, 212 F.3d 891, 895 (5th Cir. 2000). The second step requires the court to determine whether it actually has the authority to grant declaratory relief in the case. *Sherwin-Williams*, 343 F.3d at 387. If it does, the court's final step is to decide how to exercise its discretion, that is, whether to dismiss the action or take it up on the merits. *Id.*

Here, it is undisputed that an actual controversy exists, given the California lawsuit currently pending. The Court therefore turns to step two: whether it has authority to issue declaratory relief. This step involves consideration of the Anti-Injunction Act[6] and mandatory abstention principles. *See Travelers Ins. Co. v. Louisiana Farm Bureau Federation, Inc.*, 996 F.2d 774, 776 (5th Cir. 1993). When a parallel lawsuit is pending in state court, Fifth Circuit precedent views a declaratory judgment as tantamount to an injunction. *Id.* Accordingly, the district courts are to abstain from considering the merits of a declaratory judgment action when "(1) a declaratory defendant has previously filed a cause of action in state court against the declaratory plaintiff, (2) the district court is prohibited from enjoining the state proceedings under the Anti-Injunction Act, *and* (3) the district court is prohibited from enjoining the state proceedings under the Anti-Injunction Act." *Id.* (citing *Texas Employers' Ins. Ass'n v. Jackson*, 862 F.2d 491, 506 (5th Cir.

---

[5] Typically, "an actual controversy exists where 'a substantial controversy of sufficient immediacy and reality [exists] between the parties having adverse legal interest.'" *Orix Credit Alliance*, 212 F.3d at 896 (citing *Middle South Energy, Inc. v. City of New Orleans*, 800 F.2d 488, 490 (5th Cir. 1986) (alteration in original)).

[6] Under the Anti-Injunction Act, "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283.

1988) (emphasis in original)). If any of these three factors is absent, abstention is not mandatory. *Torch, Inc. v. LeBlanc*, 947 F.2d 193, 194 (5th Cir.1991).

Under *Jackson* and its progeny, there appears to be some question as to whether mandatory abstention applies only when a federal declaratory judgment action is filed after a parallel state court action. *See Chevron U.S.A., Inc. v. Cureington*, 2011 WL 1085661, at *6 (W.D.La. Feb. 18, 2011) (and cases cited therein). This District Court, however, has held that filing sequence strictly matters. *St. Paul Fire & Marine Ins. Co. v. Lupin*, 1994 WL 261935 (E.D.La. June 3, 1994) (J. Feldman) (when a declaratory judgment action is filed first, abstention is not mandatory because there is no "previously filed" state court claim). Therefore, the Court finds that abstention is not mandatory in the present case, because the Mariners initiated the California lawsuit after GOL and JNB filed their declaratory judgment action.[7]

Having decided it has authority to issue declaratory relief, the Court's final step is to determine how to exercise its discretion. To prevent an abuse of discretion, the Fifth Circuit has provided the courts with seven non-exclusive factors to consider. *St. Paul Ins. Co. v. Trejo*, 39 F.3d 585, 590-91 (5th Cir. 1994). Referred to as the *Trejo* factors, they include:

(1) whether there is a pending state action in which all of the matters in controversy may be fully litigated;

(2) whether the plaintiff filed suit in anticipation of a lawsuit filed by the defendant;

(3) whether the plaintiff engaged in forum shopping in bringing the suit;

---

[7] Similar to many states, California requires an aggrieved employee provide the State's Labor and Workforce Development Agency, and the employer, with written notice of alleged violations of the California Labor Code. *See* Cal. Lab. Code § 2699.3. The aggrieved employee must then wait at least 60 days to commence a civil action. *See Id.* at §2699.3(a)(2)(A). Here, GOL and JNB filed the declaratory judgment action during the pendency of this statutorily-required waiting period, which appears to have manipulated the filing sequence of the two actions. The Court is concerned that a strict filing sequence requirement for mandatory abstention fails to account for circumstances such as these. However, the point is ultimately moot in this case, as the Court dismisses the action for discretionary reasons, discussed *infra*.

    (4) whether possible inequities in allowing the declaratory plaintiff to gain precedence in time or to change forums exists;

    (5) whether the federal court is convenient forum for the parties and witnesses;

    (6) whether retaining the lawsuit would serve the purposes of judicial economy; and

    (7) whether the federal court is being called on to construe a state judicial decree involving the same parties and entered by the court before whom the parallel state suit between the same parties is pending.

*Sherwin-Williams*, 343 F.3d 383, 388 (5th Cir. 2003) (citing *Trejo*, 39 F.3d at 590-91).

The first of the *Trejo* factors reflects comity and efficiency concerns. *Sherwin-Williams*, 343 F.3d at 391. In *Sherwin-Williams*, the Fifth Circuit stated that "if the federal declaratory judgment action raises only issues of state law and a state case involving the same state law [issue is pending], generally the state court should decide the case and the federal court should exercise its discretion to dismiss the federal suit." *Id.* at 390. In the present case, GOL and JNB are seeking a judicial determination from this Court that the law of Louisiana, not California, governs the labor dispute. This choice of law matter is one that can be, and should be, addressed by the California state court; a federal court need not intervene. Accordingly, the interests of both comity and efficiency weigh heavily in favor of dismissal.

*Trejo* factors two through four "analyze whether the plaintiff is using the declaratory judgment process to gain access to a federal forum on improper or unfair grounds." *Id.* at 391. Here, GOL and JNB filed the declaratory judgment action after receiving a mandatory right-to-sue letter from the Mariners and before state law allowed the Mariners to initiate their California lawsuit. To overcome the appearance of an improper anticipatory filing, GOL and JNB cite concern that they may face similar lawsuits in the future from other employees who worked aboard the ADELE ELISE, a vessel which carried a minimum crew of six. Circumstances considered,

however, the Court views the filing of the instant action for what it is: a tactical decision by GOL and JNB to wrestle this critical choice of law issue from a state court in California, by rushing to the doors of the federal courthouse in Louisiana.

The fifth and sixth *Trejo* factors represent efficiency considerations. *Sherwin-Williams*, 343 F.3d at 392. As touched on *supra* in its analysis of the *Burger King* factors, the Court does not view one forum as significantly more convenient than the other in this case. To be sure, it would be less burdensome for GOL and JNB to litigate here. However, none of the Mariners reside in Louisiana and the location of anticipated witnesses is unknown at this time. Conceivably, they are spread throughout the country, or even across the globe. Regardless, convenience considerations are dwarfed in this case by efficiency concerns. The existence of the California lawsuit renders this declaratory judgment action unnecessary and duplicative. Allowing it to survive another day would serve only to drain further the finite resources of the federal judiciary.

The final *Trejo* factor has no bearing on the Court's decision as it is inapplicable to the case. The Court is not being called on to construe a state judicial decree involving the same parties and entered by the court before whom the parallel state suit between the same parties is pending. The other six factors, however, overwhelmingly support a discretionary dismissal of the instant declaratory judgment action.

C. **CONCLUSION**

For the foregoing reasons, **IT IS ORDERED** that the Mariner's Motion to Dismiss is **GRANTED**. GOL and JNB's First Amended Complaint for Declaratory Judgment is hereby **DISMISSED**.

New Orleans, Louisiana, this <u>5th</u> day of December 2016.

                                              **KURT D. ENGELHARDT**
                                              **United States District Judge**